UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SALEM,<br><br>  Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for LA JOLLA BANK, FSB; UNITED STATES OF AMERICA,<br><br>  Defendants. | Case No.: 15-CV-1114-AJB-BGS<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND, (Doc. No. 58); AND**<br><br>**(2) GRANTING DEFENDANTS' MOTIONS TO DISMISS, (Doc. Nos. 40, 60)** |

Presently before the Court are three pending motions: a motion for leave to file a fourth amended complaint ("FAC") filed by Plaintiff Christopher Salem ("Salem"), (Doc. No. 58), and two motions to dismiss filed by Defendants Federal Deposit Insurance Corporation as Receiver for La Jolla Bank ("FDIC-R") and the United States of America ("United States") (collectively, "Defendants"), (Doc. Nos. 40, 60). Having reviewed the parties' legal arguments in light of controlling authority, and pursuant to Local Civil Rule 7.1.d.1, the Court finds the matters suitable for disposition without oral argument. For the

reasons set forth below, the Court **DENIES** Salem's motion for leave to amend and **GRANTS** Defendants' motions to dismiss. This case is **DISMISSED WITH PREJUDICE**.

## BACKGROUND

On February 18, 2016, Salem filed a third amended complaint ("TAC") asserting claims of negligence, gross negligence, unfair and deceptive practices, breach of the covenant of good faith and fair dealing, breach of contract, fraud, violations of bankruptcy law, and intentional infliction of emotional distress. (Doc. No. 37.) The following facts are taken from the TAC and construed as true for the limited purpose of resolving the instant motions. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).[1]

This dispute centers on two mortgages Salem obtained from La Jolla Bank ("LJB") on two properties in Hawaii in August 2008 and those properties' subsequent foreclosure. (*See* Doc. No. 5 ¶ 13.) Prior to obtaining loans through LJB, Salem had a fee interest in a single family dwelling, located at 8 Hui Road ("Hui Road home"). (*Id.* ¶ 8.) Salem decided to purchase a different home, located at 5106 Lower Honoapiilani ("Lower Road home"). (*Id.* ¶ 9.) Salem obtained two mortgages from LJB, which were "recorded on top of one another on [] each individual property in first and second position, respectively"; in other words, the loans were cross collateralized, meaning that default on one mortgage vested in LJB the ability to foreclose on both. (*Id.* ¶ 10.)

On February 19, 2010, the Office of Thrift Supervision ("OTS") closed LJB and appointed the FDIC as Receiver. (*Id.* ¶ 14; Doc. No. 37 ¶ 36.) That same day, the FDIC, FDIC-R, and One West Bank ("OWB") entered into a purchase and assumption agreement

---

[1] In violation of Local Civil Rule 15.1.a, the TAC incorporates by reference the statement of facts and case history contained in the first amended complaint. (Doc. No. 37 ¶ 59.) *See* Civ. L.R. 15.1.a ("Every pleading to which an amendment . . . has been allowed by court order[] must be complete in itself without reference to the superseded pleading."). The Court will include those facts in its recitation of this case's background as the TAC is impossible to follow without their inclusion.

by which OWB acquired the beneficial interest in Salem's two LJB loans. (Doc. No. 5 ¶ 15; Doc. No. 37 ¶ 36.)

On September 17, 2010, OWB's Hawaii counsel, RCO Hawaii, LLC, issued a notice to initiate foreclosure on the Hui Road home, listing the outstanding debt as $1,620,041.72. (Doc. No. 5 ¶ 18.) On February 28, 2011, Salem was served with a notice of foreclosure for the Hui Road home by Aqua Legal, LLC. (*Id.* ¶ 19.)

On March 2, 2011, Old Republic Title and Escrow provided notice to RCO Hawaii, LLC of a pending $1,900,000 sale of the Hui Road home. (*Id.* ¶ 20.) Based on the pendency of this sale, RCO Hawaii, LLC recorded rescission of foreclosure notices. (*Id.* ¶ 21.) Salem alleges that under the terms of his written loan agreements with LJB, OWB was obligated to accept this sale and use any residual funds to reduce the principal on the Lower Road home and provide a new mortgage loan with a reduced monthly payment. (*Id.* ¶ 22.)

Salem alleges OWB rejected this sale at the last moment, as well as "a further real estate purchase contract for $2,400,000 by making negligent claims that the LJB loan agreements provided terms and conditions to allow OWB to make demands for 100% payment of both residential mortgages upon the sale of either property." (*Id.* ¶ 23.) Salem further alleges the FDIC and FDIC-R were directly involved in these decisions. (*Id.* ¶ 24.)

On August 26, 2013, Salem and OWB attended a court-ordered settlement meeting, at which the FDIC and FDIC-R were not present. (*Id.* ¶ 27.) Salem entered into a settlement agreement with OWB, drafted by OWB's legal counsel, which released the FDIC from liability. (*Id.* ¶¶ 28–29.) Salem retained rights to pursue an administrative claim with the FDIC-R. (*Id.* ¶ 29.)

On September 15, 2014, Salem, through his then-counsel Leon Campbell, submitted an administrative claim to the FDIC-R. (Doc. No. 37-1.) The FDIC-R disallowed Salem's claim as untimely because it was received after the "bar date," which the FDIC-R had designated as June 1, 2010. (Doc. No. 37 ¶ 14.) Donald B. McKinley ("McKinley"), regional counsel for the FDIC-R, wrote to Campbell separately, informing Campbell that the substance of Salem's administrative claim went beyond the administrative claims

process. (Doc. No. 37-2 at 1.) McKinley specified the FDIC-R "is not and has never been a party to any of the litigation or bankruptcies involving" OWB and Salem. (*Id.*) McKinley also stated the FDIC-R "has no authority to direct or control [OWB's] actions or decisions." (*Id.*) Finally, McKinley clarified that, "[t]o the extent [Campbell's] narrative refers to various frauds and misrepresentations contained in motions and affidavits filed by [OWB], again, [the] FDIC-R is not [OWB]. Your client [Salem] has an opportunity to seek a remedy against [OWB] for the alleged wrongful actions in the relevant forum." (*Id.* at 1–2.)

While far from clear, Salem's complaint against Defendants appears to be an intricate web of fraud, deceit, and concealment, orchestrated between multiple parties and spanning many years and many lawsuits. Such includes LJB executing the loans in violation of federal lending laws, (Doc. No. 5 ¶ 16; Doc. No. 37 ¶¶ 54, 65, 69); OWB and the FDIC-R altering and concealing documents related to that process notwithstanding Salem's requests for discovery related to an OTS investigation he instituted by filing a complaint in April 2010, in a Hawaii foreclosure action related to the same loans and foreclosures, and in this lawsuit, (Doc. No. 37 ¶¶ 27–29, 31–34, 38–41, 46, 52, 58); and conflicts of interest stemming from OWB's and the FDIC-R's employment of Kobayashi, Sugita, & Goda LLP ("KSG"), (*id.* ¶¶ 19, 22–23).

Salem filed the instant action before this Court on May 18, 2015. (Doc. No. 1.) After having a prior iteration of the complaint dismissed, Salem filed the TAC, the operative complaint, on February 18, 2016. (Doc. No. 37; *see* Doc. Nos. 5, 6, 32.) In the TAC, Salem asserts the Court has subject matter jurisdiction over this dispute by virtue of the Federal Tort Claims Act ("FTCA"). (Doc. No. 37 ¶ 5.)

On April 19, 2016, the FDIC-R moved to dismiss the TAC, arguing the Court lacks subject matter jurisdiction and the TAC fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6). (Doc. No. 40.) The United States also moved to dismiss the TAC for similar reasons on July 22, 2016. (Doc. No. 60.) Meanwhile, on July 15, 2016, Salem filed a motion for leave to file a fourth amended complaint ("FAC"). (Doc. No. 58.) All three motions are fully briefed. (Doc. Nos.

47, 48, 50, 62–66.) On October 5, 2016, the Court took this matter under submission. (Doc. No. 67.) This order follows.

## LEGAL STANDARDS

### I. Motion To Dismiss For Lack Of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). In civil cases, federal courts have subject matter jurisdiction over only those cases where either diversity jurisdiction or federal question jurisdiction exist. *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068–69 (9th Cir. 2005). Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332. Federal question jurisdiction exists in cases that arise under federal law. *Id.* § 1331.

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the party asserts a factual challenge, the court may consider extrinsic evidence demonstrating or refuting the existence of jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.* The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

### II. Motion For Leave To Amend The Complaint

Rule 15(a) governs leave to amend prior to trial. A party may amend its pleading once as a matter of course within 21 days after serving it; or, if the pleading is one requiring a response, within 21 days after service of the responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing

party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint.*" Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id*. (emphasis in original).

The grant or denial of leave to amend is in the Court's discretion. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Consequently, the policy in favor of granting leave to amend is applied with extreme liberality. *See Foman v. Davis*, 371 U.S. 178, 181–82 (1962).

## DISCUSSION

### I. *Defendants' Motions To Dismiss For Failure To State A Claim*

Defendants assert facial challenges to the TAC, asking the Court to dismiss this action for lack of subject matter jurisdiction. (Doc. No. 40-1 at 11; Doc. No. 60-1 at 19–26.) Because their arguments differ slightly, the Court will consider each motion to dismiss in turn.

### A. **The Court Lacks Subject Matter Jurisdiction Over Salem's Claims As Alleged Against The FDIC-R Because the FDIC-R Cannot Be Sued In Tort.**

The FDIC-R argues dismissal of this lawsuit as alleged against it is appropriate because, as a federal agency, it cannot be sued in tort. (Doc. No. 40-1 at 11–12.) The FDIC-

1  R further argues the Court lacks subject matter jurisdiction because Salem failed to exhaust
2  the administrative claims procedure. (*Id.* at 12–13.)
3      Where suit is brought against the United States, federal courts have no jurisdiction
4  absent the United States' consent to be sued. *See United States v. Mitchell*, 445 U.S. 535,
5  538 (1980). Certain federal statutes provide limited exceptions to this general rule. For
6  example, the FTCA grants the federal district courts exclusive jurisdiction over civil
7  actions against the United States for damages "caused by the negligent or wrongful act or
8  omission of any employee of the Government while acting within the scope of his office
9  or employment . . . ." 28 U.S.C. § 1346(b)(1).
10     "The FTCA is the exclusive remedy for tortious conduct by the United States, and it
11 only allows claims against the United States. Although such claims can arise from the acts
12 or omissions of United States agencies (28 U.S.C. § 2671), an agency itself *cannot* be sued
13 under the FTCA." *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998) (citing *Shelton v.*
14 *United States Customs Serv.*, 565 F.2d 1140, 1141 (9th Cir. 1977)) (emphasis added). In
15 *Craft*, plaintiffs sued the United States and FDIC-R for tortious breach of the implied
16 covenant of good faith and fair dealing. *Id.* at 706. The Ninth Circuit easily dismissed all
17 claims against the FDIC-R for lack of subject matter jurisdiction, stating the FTCA waives
18 sovereign immunity against *only* the United States, not United States agencies. *Id.* at 706–
19 07.
20     Try as he might, Salem has failed yet again to provide any basis for the Court's
21 subject matter jurisdiction over the FDIC-R in this action. The TAC expressly invokes the
22 FTCA. (Doc. No. 37 ¶ 5.) However, the TAC is predicated entirely on the FDIC-R's
23 purportedly tortious conduct, asserting multiple allegations of deceit, concealment, and
24 misrepresentation. (*See, e.g.*, *id.* ¶¶ 18, 20, 22, 33, 46, 50, 52–53, 56, 58.) The vast majority
25 of Salem's claims are expressly labeled as torts. Even those claims that are labeled breach
26 of contract rely on allegations of fraud, deceit, concealment, and misrepresentation. (*Id.* at
27 Ct. III ¶¶ 1; Ct. IV ¶¶ 1, 10.) *See also infra* Discussion Section I.B.
28     In light of the unequivocal holding in *Craft*, the Court finds it lacks subject matter

jurisdiction over Salem's claims against the FDIC-R. The Court therefore **GRANTS** the FDIC-R's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and **DISMISSES** the TAC as alleged against the FDIC-R. Because the Court **GRANTS** the FDIC-R's motion on this basis, the Court does not reach the FDIC-R's remaining arguments. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868))).

  **B.** **The Court Lacks Subject Matter Jurisdiction Over Salem's Claims As Alleged Against The United States Because The FTCA Does Not Waive Sovereign Immunity For Claims Arising Out Of Deceit Or Misrepresentation.**

  The United States asserts dismissal of this lawsuit as alleged against it is likewise appropriate because the FTCA does not waive the United States' sovereign immunity for claims arising out of misrepresentation or deceit. (Doc. No. 60-1 at 19–23.) Alternatively, the United States argues the independent contractor and/or discretionary function exceptions apply. (*Id.* at 23–26.) Finally, the United States argues that even if Salem has stated a breach of contract claim, the Court lacks jurisdiction because Salem seeks an amount exceeding $10,000; accordingly, he must bring his suit in the Court of Federal Claims. (*Id.* at 27; Doc. No. 66 at 8–9.)

  As stated above, the federal courts have no jurisdiction over suits brought against the United States absent the United States' consent to be sued. *See Mitchell*, 445 U.S. at 538. The FTCA provides a partial waiver to the United States' sovereign immunity. *Lehner v. United States*, 685 F.2d 1187, 1189 (9th Cir. 1982). The FTCA's waiver of immunity does not, however, extend to any claim arising out of misrepresentation, fraud, or deceit. 28 U.S.C. § 2680(h) (exempting misrepresentation and deceit from the FTCA's waiver of immunity); *Owyhee Grazing Ass'n v. Field*, 637 F.2d 694, 697 (9th Cir. 1981) ("[C]laims against the United States for fraud or misrepresentation by a federal officer are absolutely

barred by 28 U.S.C. § 2680(h)."). In other words, if a plaintiff's claim is predicated upon misrepresentation, fraud, or deceit, the United States may not be sued.

The reach of this exception is broad, applying to claims that sound in misrepresentation, fraud, or deceit, even when labeled otherwise. *See United States v. Neustadt*, 366 U.S. 696, 706–07 (1961) (finding negligence claim fell within misrepresentation exception, and thus barred by sovereign immunity, where it was predicated on negligent misrepresentation); *Alexander v. United States*, 787 F.2d 1349, 1350–51 (9th Cir. 1986) ("Although his claim is based on negligence, it is actually a claim for 'misrepresentation' and therefore barred by the immunity retained under 28 U.S.C. § 2680(h).").

Here, the United States' sovereign immunity plainly bars Salem's complaint in its entirety. Salem's claims are all predicated on the purported fraud, deceit, and concealment of loan documents by the United States (through the FDIC-R). There are numerous allegations concerning alteration and concealment of his loan documents dating back to 2010. (Doc. No. 37 ¶¶ 20, 22, 33, 40–41, 45–46, 50, 52, 55–56, 58, 64.) Two of his claims are expressly labeled as unfair and deceptive practices and fraud, and are grounded in allegations of obstruction, concealment, and cover-ups. (*Id.* at 21–22, 24–25.)

The claims that are not expressly labeled as such are nonetheless predicated on Salem's allegations of misrepresentation, fraud, and deceit. The negligence and gross negligence claim faults the United States in part for "[f]ailing to adequately supervise the pleadings and representations made by KSG that were false representations of the LJB loan execution documents acquired by FDIC-R from LJB[.]" (*Id.* at Ct. 1 ¶ 3.c; *see also id.* at Ct. 1 ¶ 3.g, 3.h, 3.j 3.k, 4.) This allegation, however, is nothing more than a claim of negligent misrepresentation and is thus barred. *Neustadt*, 366 U.S. at 706–07; *see also Mt. Homes Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990) ("Although [plaintiff] has couched its complaint in terms of the breach of a duty to prepare the documents adequately, we look beyond its characterization to the conduct on which the claim is based.").

Similarly, the breach of contract claim is based in part on "false representations." (*Id.* at Ct. IV ¶ 10.) It, as well as the breach of the covenant of good faith and fair dealing claim, expressly incorporate the first 71 paragraphs of the TAC, which are replete with allegations of misrepresentation, fraud, and deceit. (*Id.* at Cts. III & IV ¶ 1.)

The cause of action for violations of bankruptcy law is also predicated upon "false and misleading statements and representations," as well as obstruction and concealment of loan documents. (*Id.* at Ct. V ¶¶ 1–6.) Salem's final claim of intentional infliction of emotional distress is likewise grounded in terms of "cover[ing]-up . . . acts and omissions constituting fraud[.]" (*Id.* at Ct. VI ¶ 4; *see also id.* at Ct. VI ¶ 1.)

In short, setting aside the labels placed on each of his claims, it is evident that Salem's entire case is built upon an intricate web of concealment, fraud, and deceit concocted to prevent him from obtaining loan documents that will prove the loans LJB executed and the resulting foreclosures were unlawful. *Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) ("This circuit looks beyond the labels used to determine whether a proposed claim is barred.") Whatever Salem's recourse against private entities may be, he may not sue the United States based on the allegations contained in the TAC. 28 U.S.C. § 2680(h); *Owyhee Grazing Ass'n*, 637 F.2d at 697; *see also Parker v. Clingerman*, No. 11-cv-00328 BEN (RBB), 2011 WL 3364376, at *2 (S.D. Cal. Aug. 3, 2011) ("Plaintiff's five causes of action—constructive fraud, deceit, deceit, declaratory/injunctive, and public interest case—are all interrelated, as they all involve allegations that Ms. Clingerman engaged in deception. Accordingly, they are all barred by the FTCA exceptions listed in [] § 2680(h).") On this basis, the Court **GRANTS** the United States' motion to dismiss for lack of subject matter jurisdiction. The Court therefore does not reach the United States' alternative arguments. *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. at 514).

## II.    *Salem's Motion For Leave To Amend*

Salem requests that the Court permit him leave to file an FAC to clarify that he alleges claims for breach of contract. (Doc. Nos. 58, 58-1.) Alternatively, if the Court is

disinclined to grant him such leave, he asks the Court for a brief stay to permit him to file a motion before the Hawaii district court. (Doc. No. 58 at 3.) Having reviewed the proposed amendment, and in light of the foregoing, the Court finds granting either request inappropriate because Salem cannot cure the defects in his pleading as identified *supra* in Discussion Section I.

Turning to the five *Descertrain* factors, the Court finds futility alone is enough to deny Salem's motion. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

Comparing the TAC and the proposed FAC, the Court finds any changes to the complaint *de minimus*. The only substantive addition is a lengthy paragraph to the jurisdiction and venue section of the complaint, in which Salem asserts the Court has subject matter jurisdiction over this case due to the "contractual settlement agreement" between Salem and the FDIC-R.[2] (Doc. No. 58-1 ¶ 6.) Aside from this paragraph, the proposed amendment merely incorporates the word "contract" or "contractually" or some variation of the phrase "contractual settlement agreement" in multiple paragraphs.[3] (*See, e.g.*, *id.* ¶¶ 8, 9, 15, 17, 20, 26, 35.) As noted above, the Court "looks beyond the labels used to determine whether a proposed claim is barred." *Thomas-Lazear*, 851 F.2d at 1207.

---

[2] The Court notes that while Salem identifies the settlement agreement as being between himself and the FDIC-R, he admits that the FDIC-R was not a party to the lawsuit in Hawaii, nor was it present during the settlement negotiations that ultimately led to the settlement agreement. (Doc. No. 5 ¶¶ 27–29.)

[3] Salem also clarifies that the FDIC-R's actions give rise to the United States' liability. (Doc. No. 58-1 at Ct. 1 ¶ 1; Ct. II ¶ 2; Ct. V ¶ 2.)

1 The inclusion of such buzz words and phrases does not cure the deficiencies outlined in
2 the previous section.

3 This inability to cure the deficiencies with his pleading are rendered all the more
4 stark because Salem had the benefit of the Court's prior order dismissing the first amended
5 complaint and the FDIC-R's motion to dismiss the TAC when he filed his proposed
6 amendment. Salem's failure to address his complaint's shortcomings under such
7 circumstances underscores why future amendment is futile. *See Zucco Partners, LLC v.*
8 *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously
9 been granted leave to amend and has subsequently failed to [cure the deficiencies noted
10 with regard to his] claims, the district court's discretion to deny leave to amend is
11 particularly broad." (citation and internal quotation marks omitted)); *see also Montes v.*
12 *Breckinridge Prop. Fund 2015, LLC*, No. 15-CV-2782-AJB-JMA, slip op. at 7–8 (S.D.
13 Cal. July 1, 2016) ("Rather than cure the deficiencies identified in the Court's prior order
14 [dismissing one of Plaintiffs' claims], Plaintiffs have merely proffered an amendment that
15 is virtually identical to the original complaint. Plaintiffs' failure to address the[]
16 shortcomings [the Court previously identified] renders their proposed amendment subject
17 to dismissal once again for failure to state a claim. As such, permitting amendment would
18 be futile."). For this reason, the Court **DENIES** Salem's motion for leave to file the FAC.
19 (Doc. No. 58.)

20 For similar reasons, the Court finds dismissing the TAC with leave to amend would
21 be a fool's errand. Where dismissal is appropriate, a court should grant leave to amend
22 unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v.*
23 *City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). Here, it is abundantly clear that Salem
24 cannot allege a claim that would bring his complaint within the FTCA's waiver of
25 sovereign immunity. As he himself describes this case, his complaint "is a roadmap
26 focusing on a single lane of continuing concealment of [] Salem's LJB mortgage loan
27 documents at every turn under the control and purview of the FDIC-R." (Doc. No. 65 at 14
28 ¶ 4.) Given that the operative complaint is its fourth iteration—his failed proposal being

the fifth—the Court finds Salem cannot possibly cure the jurisdictional deficiencies identified in the previous section. Accordingly, leave to amend (and a stay of this case) would be for naught. For this reason, this action is **DISMISSED WITH PREJUDICE**. *See Parker*, 2011 WL 3364376, at *3 ("Plaintiff's claims are clearly barred by the FTCA. . . . Accordingly, the Court finds that granting Plaintiff leave to amend would be futile.").

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), (Doc. Nos. 40, 60), and **DENIES** Salem's motion for leave to amend, (Doc. No. 58). The Court **DISMISSES** this case **WITH PREJUDICE**. Accordingly, this case is now **CLOSED**.

**IT IS SO ORDERED.**

Dated: December 14, 2016

Hon. Anthony J. Battaglia
United States District Judge